Next case is Knollenberg v. Kincade for the appellant, Mr. Pigg, and for the appellee, Ms. Thompson. You may proceed. Good afternoon, Your Honors, and may it please the court, counsel. This case presents essentially two possibilities. One is that the evidence clearly showed that the plaintiff would incur future harm as a result of the injuries in this case, an automobile accident, and it was not reasonable for the jury to find otherwise, given the evidence before them. Second possibility is it was reasonable for the jury to find, notwithstanding the physician's testimony, that future surgery was likely, that it was not proven likely, in this case, they should have received increased risk instructions. This case, like so many others you see, I'll start with an automobile accident. I've heard of alternative pleading, but how do you, how do you get to that point? Your whole theory of the case is that it's more than 50%. I happen to agree that it seems like it is more than 50%. Let's accept that for the moment. How can you get instruction on less than 50%? I'm sorry. What's even the purpose of discussing that? I don't understand. Your Honor, when the Supreme Court cited a deal and they clearly said that a plaintiff must be permitted to recover for all demonstrated injuries, and of course the reason is that you can't go back later and say, well, I wound up having to get this surgery. I want more likely, or that it's more likely, and I get, I get both. It'd be like the criminal defendant saying, I'm entitled to the benefits of both sentencing laws when one is changed. You know, there's one of those dates. Are you sentenced before the, or before the law changed, or after? I mean, it's antithetical to the, your theory of recovery. Your Honor, the, the situation in this case, we are, if the court believes that it was within the purview of the finder of fact to, notwithstanding the evidence that future surgery was likely, to disagree and say we don't find it proven likely, the entire purpose of the deal and instructions is to permit recovery when it is not proven likely to occur. And in fact, the deal and instructions plainly provide a paragraph to be given where plaintiff seeks both damages likely to occur and not proven likely to occur. Notwithstanding the undisputed evidence, the testimony of this case, that it was reasonable for the finder of fact to find it not proven likely, the entire purpose of providing them with those instructions is to say, if you don't find that it is likely to occur, you should nonetheless award damages to the extent that you find that it is probable to occur. If it's not greater than 50%, you should still award damages to the extent, to the percent that you find it. We have a situation where, after dealing was decided, the IPI committee attempted to craft instructions, comments, and notes on use consistent with the court's holding of that case. The purpose of those instructions was to ensure that a jury would not be confused when they have a situation where it is likely to occur and still think that we see, well, it's only 60% likely and therefore we should calculate it. And so they said, don't give this unless the plaintiff sees damages that are not proven greater than 50% likely. Here, the plaintiff anticipated that notwithstanding his doctor's testimony, notwithstanding his own belief that he was going to have to get this done eventually, the jury might think, well, you know, it's been a few years, they haven't got it done, I don't know if you're going to get it done even though you say that you will, and so I don't think that you've proven it likely. The court has not proven likely to occur. And so either it is for the finder of fact and they could have determined not proven likely, or it's not and it should be remanded for a new trial because the jury's verdict was clearly in our favor. Your Honor, there is perhaps an undercurrent of argument that the testimony was, well, the surgery might be likely, but not that it was going to be necessary. This is a case of pre-injury based surgery. It's not a situation where a bullet or something left in in the case of surgery is going to migrate and cause a life-threatening condition. It's a matter of, is this wrist injury going to get to the point where the plaintiff just can simply no longer bear the pain and therefore is going to accept the fact he won't be able to use his wrist for the rest of his life and undergo that surgery. His doctor thought it would get to that point. He thought it would get to that point. Evidently, the jury disagreed. The undisputed testimony was that it was likely, but if it was reasonable for the jury to find that it was not likely, they should have received a jury instruction so they could determine just how likely it was. To the extent that the comments and the notes on use of the IPI suggest otherwise, perhaps they're wrong. After all, the IPI are not vetted in advance by an appellate court decision. They are drafted by scabbage, fairly reflect what they believe the state of the law is. And adopted by the Illinois Supreme Court. Absolutely, Your Honor. Case law says it's not the same as judicial proof. And Your Honor, I would suggest to you that the difference between being judicially admitted and being approved is we've all agreed that this is what we believe is the law and correctly states the law, and those instructions are put forth for that purpose so that we would have a uniform statement of the law. But if a particular note on use or a committee comment doesn't fully or fairly reflect what the law is, that's not controlling. And in this case, Your Honor, to the extent that the trial court misread the instruction as saying, well, because plaintiff's testimony is only that it's likely to occur, we can't give this, I would suggest to you that there's no authority for that in decided Illinois cases. And I don't believe that there is anything out there that says that this is intended to force a plaintiff to find a doctor that says, no, I don't think you're likely to have surgery. The evidence is what the evidence is. If it's reasonable for the prior fact to find that it's not likely to occur, then they should be able to determine the probability that it will occur. The purpose, the entire point of having that instruction is to permit all the recovery to be sought at once. There's no other way. There's nothing in this case. At the time of trial, plaintiff's testimony, he was in worse shape than he was before. There's nothing to suggest that there's no future pain, that there's no future going to have to have the surgery done. The jury evidently concluded they didn't agree that it was proven likely to occur. They evidently concluded they didn't think it was likely that he would have future pain, even though he had been having pain all along. But if it was within the realm of reasonable possibilities for the finder of fact, the problem is that finder of fact wasn't fairly and fully instructed on the state of the law. If, however, it's not reasonable, then it should be remanded for a new trial for a jury to find a reasonable decision within what those facts are. It's not a case that presents a tremendous number of issues. It was a fairly simple and straightforward one, and we recognize that the wrinkle is some of the wording of the notes on you say it should be given when the damages are less than 50% likely to occur. Well, who determines that? If it's for the jury to decide, then they should be told what to do if they decide it's proven not likely to occur. For that if the court finds that this was simply an unreasonable verdict, it has to be remanded for a new trial. On the other hand, it may have been a reasonable one, but the jury wasn't instructed as to what the law was, that it be remanded for a new trial should give those instructions so that they could determine what the proven likelihood of this future surgery is, of the future pain and suffering, and where damage is recorded. Do you have any questions? There don't appear to be any. I think you'll have additional time on rebuttal. Thank you, Your Honor. Ms. Thompson. Good afternoon, Your Honor. May it please the court and counsel. I'd like to start off by citing some Illinois law regarding the jury instructions and committee comments. First, saying that Illinois pattern instructions have been painstakingly drafted and the trial judges should not take it upon themselves to second-guess the drafting. Pattern jury instructions, in the order in which they are to be read to the jury, was not given to the trial courts or the appellate courts. The Illinois Supreme Court gave that job to a committee on pattern jury instructions, requires its lower courts to follow the directives of the committee, lest the committee fail to state the law accurately. I do think that the law was accurately stated and I think Your Honor caught that and made the right point. It is true that IPI 30.04.04 discusses when a paragraph can be used when a plaintiff is seeking both Dillon-type future damages and future damages that are more than likely not to occur. However, the paragraph right above this states, care must be used in drafting instructions where some of the future damages are established by greater than 50% likelihood of occurrence and some by less than 50% likelihood of occurrence. What I would take this to mean, what I think is correct and what the trial judge thought would mean, let's say I get in an accident and I hurt my hand and my foot. A doctor says I have a 20% chance of infection in my hand but it's more probable than not that my foot is going to become infected. Well then we would have a situation of two different types of damages. We would need to instruct the jury that with the hand we can go ahead with these Dillon-type instructions. With the foot it would be a more probable or not. So if you had put on evidence from an expert that said we disagree with plaintiff and it's only a 20% to 30% chance that he'll need to have this surgery in the future. He's getting along nicely. He tolerates the pain. It would really be more of a personal choice than a necessity. So we think it's less likely. Then you give both instructions? Actually, no. I've thought about this a lot. What it says here in the notes on use, it says that these instructions should not be used unless the plaintiff claims damages less than 50%. So it's the plaintiff claiming the damages here. I really think that's what this all about. If the plaintiff claims more than 50% but you, through the presentation of evidence, prove that there's some likelihood, some possibility, but less than 50%, if you don't give both instructions, he would get zero. Whereas if he was willing to say there's only 49%, then he could get money. I think that's correct. I think that in this case, I think you should be on the committee. Sure. Plaintiff basically is arguing here, believe my doctor, but if you don't believe my doctor, go ahead and assign a percentage of risk anywhere from 1 to 49%. There's a couple problems with that. First of all, the fact of having to use both instructions together, if that was going to be the case, I don't know why they're separate instructions. Why isn't there one instruction? I mean, why wouldn't every plaintiff want to do this? Hey, if you're not going to believe my doctor here, if you don't believe him, go ahead and assign something lower. I don't think that's the case. Further, I know that the plaintiff cited to a larger article in his reply, and I don't know how persuasive that's going to be, but just noting from that article, they also state the facts of the Dillon case are distinguishable from any case when increased risk of future injury is more than 50% since Dillon involved future injuries which were not reasonably certain to occur. Therefore, the traditional all or nothing approach would still apply when a plaintiff proves that his future injury is more likely than not to occur. And that's what we have happening here. He's saying it's more likely than not to occur. Now, first of all, or I guess moving on, I think that my first point is clear that the instructions should not be used together. It's an either or. It's not you get both. Let's assume you prevail on that point for the moment. Moving on to my second point in relation to that, the plaintiff's position would lead to speculation by the jury. Basically, what he's wanting to do is have them pick a percentage, like I said, from 1 to 49%, but he has given no evidence whatsoever that there is less than a 50% chance. I don't think that's the second point. Let's say he doesn't get the instruction. Okay. The case carries on. Okay. You don't put on any evidence. Correct. He puts on evidence which says, yeah, it's more likely, and he's testifying, and his doctor, yeah, I'm gonna do it. Eventually, I'm gonna do it. I'm kind of toughing it out. I'm doing okay, but I'm gonna have to do it because I can't be satisfied with this. That's the only evidence in front of the jury. Were he and his doctor really that bad of witnesses that the jury wouldn't give them a buck or two, like the proven medical expenses? Because you didn't dispute those. If you have the surgery, this is the amount of money that will be required. Correct. They don't know how much pain and suffering there is. That's for the jury to decide, if there's any. How does the jury get to ignore the evidence? Well, they just, I mean, we poll them afterwards, and we find out. We just thought the doctor and the guy were both bones. Well, I mean, I do think that it is on the jury to, you know, determine the credibility of the witnesses, but also there is other evidence. The evidence did not overwhelmingly establish a right to award for future pain and the surgery was probable. That's more like the 50%. Sure, but he didn't say it was 100% going to happen. No. The plaintiff even, the plaintiff said 75 to 100% chance of having the surgery, that there's up to a 25% chance that he won't have the surgery. Right. The plaintiff had a previous injury, and Dr. Grading said that the surgery could be possible without this accident. He also, the plaintiff said that things that he has trouble doing now, he also had difficulty doing before the accident. But that he has additional limitations now. Correct. He admitted that he had some limitations in the past, but he has additional limitations now. Correct, but with the 75 to 100% likelihood, the probable, the likely, Dr. Grading and the plaintiff, they've given nothing to say that the surgery is for sure going to happen, and I think that it's, he hasn't been to the doctor since October of 2009 for this. He's been living with the pain since then. He hasn't gone back in to have the surgery. I think the jury could look at that and say, he's not going to have this surgery. He hasn't gone back. He's doing fine. He's going to keep doing fine. You know, and I think that he made that clear by saying... He's not doing fine. He has pain. Well, he, that maybe they would say that his pain isn't, isn't something he's going to, it's maybe it's not more than what he had in the past, or it's not limiting him, and that he's not going to need this surgery. I do feel that the evidence does not establish that he would endure increasing levels of pain, and that he was like, or that it was necessary that he was going to have this surgery, and I think that that, that the evidence in our favor applies for the plaintiff's argument for judgment not If there are no further questions, I would urge the court to... I cut you, is there anything further you want to say on those other issues? I mean, I cut you off. Oh, sure. Well, that's not an open invitation, that's all you need to say. Right, right. I did just want to, I did want to briefly make the point about the jury instructions regarding the speculation by the jury. I know that plaintiff has argued in his reply brief that there is no speculation, because of Dr. Grading's testimony, and this is evidence. However, the plaintiff also conceded that Dr. Grading's testimony is that the surgery is probable to happen. Isn't there always speculation in a personal injury case? How do you ever, I mean, you could call it best estimate of pain and suffering, or future medical expenses, but I mean, that's the system we're stuck with. Sure, well, and I think that there might be some degree of speculation. Well, you're speculating that there's a 25% possibility that he won't have the surgery. Correct. That's a speculation. Correct. Here, though, getting to the under 50%, there's no evidence for that whatsoever. All of the evidence is over 50%. There's nothing under 50%. We're just going to throw it to the jury, and without any sort of medical evidence with the under 50%, we're asking them to just completely pick something out of the blue, and I don't think that that's proper. I also know that the plaintiff argued that he should be permitted to recover for all demonstrated injuries. I know he spoke about that earlier, and he cited Dillon, and Dillon does say that. It says that a plaintiff is permitted to recover for all demonstrated injuries. Here, he was permitted to recover for all demonstrated injuries. What Dillon was speaking about is that prior to the Dillon case, if it was less than 50% risk of a future injury, that they weren't allowed to recover. Now they are, but either way, he is allowed to recover. Just because he didn't recover didn't mean he wasn't allowed to, and he was given the option to recover. That's all I have, unless there's any other questions. Thank you. Since there's a lot of discussion about the notes on use to 30.04.04, there's certainly a sentence in there saying it has never been the plaintiff's burden to establish future damages with 100% risk of certainty to recover full compensation for those damages, so if the position is, well, all the testimony is that this is likely to happen at some point. It's going to happen more likely than not. I can't say exactly when, we can't assign a percentage to it, but it's likely to happen, then yes, plaintiff should have recovered for that, and the jury's decision to the contrary is wrong. So, if, however simply, if it was reasonable, notwithstanding the lack of any evidence to the contrary for the jury to conclude it's not proven likely to occur, these instructions would have assisted them in determining the proper amount of compensation. Now, there is nothing to support this notion that you must have medical evidence saying less than 50% to have probability and not make it speculation. Speculation is a lack of any evidence. The case that the Pelley cited in their brief for that notion was Foley. In Foley, there is no testimony at all about the degree of risk, whether it's remote, likely, possible, no testimony about the degree of risk. Here, the testimony is the doctor, doctor reading, saying, I think it is likely to happen. He's going to have something done at some point. That is testimony of a probability. If it was within the purview of the jury to discount that probability, these instructions would assist them in properly determining those damages. And the point of the one is that this is a plaintiff's one shot. There is one chance to recover all demonstrated damages. The doctor thought he's likely to have surgery. He thought he's likely to have surgery. Evidently, the jury disagreed. Notwithstanding that, had they been instructed on this, they would have been able to say, okay, well, we don't think you proved it more than 50%, but there's still a 40% chance, something, something. Your Honor, I believe it was Justice Knacht mentioned, well, what about these proven future medical costs, at the very least? In our view, an answer for those amounts, if it is proven certain and there's no way the jury should disregard it, to us, that would be an acceptable solution. We understand that it's for the jury to determine whether any future pain and suffering is appropriate. And they may have believed that he still hurts and still have decided that it's not appropriate for him to get damages for future pain and suffering. But nonetheless, we believe that, had the jury been properly instructed in this case, relief would be appropriate. And we would ask that he be remanded for a new trial by the jury. Thank you. We'll take this matter under advisement and stand in recess until the readiness of the next matter.